## UNIVERSAL SEWER PIPE CORPORA-TION et al. v. GENERAL CONST. CO. et al.

### No. 20060.

District Court, N. D. Ohio, E. D.

Sept. 26, 1941.

F. O. Richey, of Richey & Watts, of Cleveland, Ohio, for plaintiff.

Albert Bates and Albert R. Teare, of Bates, Teare & McBean, both of Cleveland, Ohio, for defendants.

WILKIN, District Judge.

The complaint alleges infringement of U. S. Letters Patent No. 1,979,470, and prays an injunction and an accounting for profits and damages. The answer and the amended answer set up three defenses: (1) invalidity because of anticipation; (2) non-infringement; and (3) unlawful use of the patent by the plaintiffs to establish a monopoly in unpatented commodities.

At the trial, George L. Wirtz, President of the Atlas Mineral Products Company, appeared as a witness and testified that such company was conducting the defense of the action and bearing the entire expense in accordance with an agreement to guaranty the defendant Guzzo against loss from use of the Atlas Company's materials.

The court finds for the plaintiffs on the issues raised by the first and second defenses, and finds for the defendants on the issue raised by the third defense.

The patent covers a process for sealing joints of sewer pipe. A collar is placed upon the spigot end of one sewer pipe, and a liner is placed in the bell of the adjoining pipe, both being constructed of soluble material. Such collars and liners are constructed over molds which give them a wedge shape or mutually sloping surfaces so that they can be fitted together, as a cork fits in a bottle. The patented process provides for the treatment of the surfaces of the collar and liner with a solvent just before placing them together. The solvent softens the surfaces and renders them plastic to that upon evaporation of the solvent the collar and liner form a homogeneous seal.

The weight of the evidence convinces the court that the process was never described or used prior to the invention covered by the patent. The Stanford patent, which defendants relied on as their preferred case of anticipation, does not teach use of solvents to obtain a homogeneous joint. None of the other patents discloses the practice of the patent in suit. Defendants contended that the various parts of the patented process were disclosed by various prior patents or practices. The Johnston patent first assembled teachings of the various citations of the defendants and created a new process, more convenient and more useful than any previously existing. The principal novelty of the plaintiffs' process is the use of soluble collars and liners as described and their treatment by a solvent, so that their contiguity creates a real union or homogeneous seal. Any operator might have referred to prior patents covering collars and liners, to practices relating to sealing of various joints in other arts and trades, and to general works on chemistry dealing with solubles and solvents and from such sources assembled for the clay industry the process patented by the plaintiff; but no one did, except the plaintiff patentee. The plaintiffs admit that the patent is for a combination of elements, but they claim, and the proof supports their contention, that the result of the combination is something that had never before existed, that it meets a definite need in a different industry from that in which some of the elements had previously been used.

The commercial success of the patented process is conceded. The witness Wirtz said that the Johnston process created a demand which his company tried to meet. Their effort embodied a similarly molded joint and "Slip Joint" adhesive. Commercial success, as stated by defendants, is not in itself invention, nor a substitute for invention, nor absolute proof of invention. But acknowledgment and recognition by way of purchase and by acceptance of licenses, is evidence of novelty and usefulness in the opinion of those engaged in the trade where the patent operates. It is persuasive because it embodies a practical judgment, a conclusion not forced or strained by the technicalities of science or the logomachy of the law.

The evidence is more convincing as to infringement than as to invention. The mechanical parts of defendant's practice were almost identical with those of the plaintiffs. The only variance was in the nature of the solvents used; and the demonstrations and experiments in court revealed clearly that the reaction of the defendant's solvent upon the collars and liners was quite similar to that used by plaintiffs. Defendant's attempts to produce satisfactory results within the disclosures of the Stanford patent failed to create a solid or firm union. The success of the method adopted by the defendants was apparently due to the fact that the solvent which they used contained some petroleum derivative, such as gasoline, which caused a fusion of materials or a homogeneous seal. Such practice infringes the patent.

As to the third defense, the plaintiffs admit that they offered licenses for the

use of their patent only in connection with the sale of materials not covered by the patent monopoly. Counsel for plaintiffs referred to this part of the answer as the "anti-trust defense". And counsel for defendants referred to the principle upon which the defense was based as "the old doctrine of unclean hands". This court feels that neither statement is accurate. Neither the anti-trust statutes nor the equitable doctrine regarding the necessity of clean hands is involved. The defense is based upon the simple rule that every use of a patent as a means of obtaining a monopoly of unpatented material is prohibited. There is no need to invoke the anti-trust statutes which inveigh against monopoly, nor the equitable doctrine which refuses relief to one whose own purposes are not clean, for the reason that the limited monopoly granted by the patent does not go so far as the patentee is attempting to extend it. He therefore has no right to do what he attempts to do, and relief is denied.

The plaintiffs contend that because there is no evidence that they ever denied a license to an applicant, they should not be held to have violated the law, even though they admit that their method of doing business was to sell the material and allow an implied license to accompany it. The courts have declined to make such distinctions. They have denied relief " * * * on the broad ground that the owner of the patent monopoly, ignoring the limitation 'inherent in the patent grant,' sought by its method of doing business to extend the monopoly to unpatented material used in practicing the invention. By the rule * * * every use of a patent as a means of obtaining a limited monopoly of unpatented material is prohibited. * * * It applies whatever the nature of the device by which the owner of the patent seeks to effect such unauthorized extension of the monopoly". Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 463, 58 S.Ct. 288, 290, 82 L.Ed. 371. Cf. Morton Salt Co. v. G. S. Suppiger Co., Jan. 5, 1942, 62 S.Ct. 402, 86 L.Ed. ——.

The defendants cannot be penalized for infringing the plaintiffs' monopoly at a time when they were not offered the opportunity to do business within the proper limitations of the plaintiffs' patent grant. As long as plaintiffs attempt to extend their monopoly beyond its proper limitations, they are in no position to complain against those who fail to respect the grant which they themselves violate. Courts refuse to make any order that would serve to aid the patentee's attempts to extend his patent monopoly over unpatented material. As was stated in American Lecithin Co. v. Warfield Co., 7 Cir., 105 F.2d 207 (8), 212:

"In determining when courts will interfere with the patentee's power to sue infringers (contributory or direct), it is necessary to take into consideration whether, as a practical matter, the exercise of the patent monopoly will result in a limited monopoly in an unpatented commodity, and whether the patentee seeks to derive his profits not from the invention itself but from the unpatented supplies used in the invention."

This particular defense was first raised in the amended answer. During the progress of the trial, counsel for plaintiffs announced that plaintiffs had in good faith changed their method of doing business so as to make certain that there would be no attempt to monopolize the materials used in the patented process. They state that they have announced to the world by letters and publication that they will sell the right to use their patented process free of any obligation to buy their material. They ask the court to consider their prayer for injunction as of the time of trial and after their declaration of intention to confine their operations strictly within the limits of their patent grant.

■ The parties on both sides requested adjudication of the patent questions. The issues were raised, and labor and money had been expended in support of the opposing contentions. Both sides recognized that if the case were disposed of entirely on the third defense, a new suit would have to be instituted to determine the questions raised by the first and second defenses. So the court considered the first and second issues and determined them as indicated. Having done so, the court concludes that the plaintiffs are entitled to relief by way of injunction, provided, however, that the plaintiffs, in their operations under their patent, stay within the limits of the monopoly granted by the patent. Courts properly decline to give advice or direct the future course of litigants. But the Court of Appeals for the Ninth Circuit (Dehydrators, Ltd., v. Petrolite Corp., 117 F.2d 183, 187) pointed out that it would have been " * * * a very simple matter to fix a royalty fee of so many cents per gallon whether purchased from the appellee [patentee] or from outsiders".

This court has no reason to doubt the profession of good intentions made by counsel for plaintiffs. During compliance with such professions the plaintiffs are entitled to the full enjoyment of their patent rights free from any infringement by defendants. B. B. Chemical Co. v. Ellis, 1 Cir., 117 F.2d 829, affirmed Jan. 5, 1942, 62 S.Ct. 406, 86 L.Ed. ——. Cf. Novadel-Agene Corp. v. Penn, 5 Cir., 119 F.2d 764; 49 U.S. P.Q. 520.

Decree for injunction. Costs will be divided and one-half assessed against plaintiffs and one-half against defendants.