## ATLAS MINERAL PRODUCTS CO. OF PENNSYLVANIA v. JOHNSTON.

### No. 3322.

District Court, E. D. Michigan, S. D.

Oct. 28, 1942.

Whittemore, Hulbert & Belknap, of Detroit, Mich. (George J. Harding, of Philadelphia, Pa., of counsel), for plaintiff.

Swan, Frye & Hardesty, of Detroit, Mich. (Richey & Watts, of Cleveland, Ohio, of counsel), for defendant.

LEDERLE, District Judge.

### Findings of Fact.

1. This is an action brought in accordance with the provisions of the Declaratory Judgment Act, Section 274d of the Judicial Code, 28 U.S.C.A. § 400. Plaintiff is a Pennsylvania corporation engaged in the business of manufacturing and selling materials to be used for the purpose of laying drain tiles. The defendant is a resident of this District and the owner of United States Letters Patent No. 1979470. Both claims of this patent are involved in this suit, and they both relate to a method of joining bell and spigot pipe sections.

2. On November 6, 1941, a judgment was entered in the District Court for the Northern District of Ohio, Eastern Division, which sustained the validity of this patent. That suit was entitled Universal Sewer Pipe Corporation, James C. Johnston, et al., Plaintiffs, v. General Construction Company, et al., 42 F.Supp. 132, and it will hereafter be referred to as the Cleveland case. The plaintiff, Atlas, furnished the materials involved in that suit, and conducted the defense, and it concedes that the judgment therein is binding upon it in this proceeding.

3. After the judgment was entered in the Cleveland case, the plaintiff started selling its new product called "Slipjoint GK Adhesive No. 160." Thereupon the defendant notified plaintiff that he considered this new method an infringement of his patent and threatened to start suits against the plaintiff and its customers. Plaintiff seeks a judgment declaring that it has a right to make use of, and sell, its Slipjoint GK Adhesive No. 160 for preparation and use with slipjoint pipe having pre-formed collars and liners without

threats or interference from the defendant, and that the manufacture and sale of this product does not constitute contributory infringement of defendant's patent.

4. The method claimed by the patent is simple, and the specifications are complete and easily understood. The opinion in the Cleveland case, which is substantially the same as the findings of fact and conclusions of law, clearly sets forth the gist of the invention and is reported in 42 F.Supp. 132. The complaint herein was filed on April 14, 1942, and the defendant's answer and counter-claim on May 4, 1942. The defendant admits that he claims that the method involved in this suit constitutes an infringement of his patent, and that he has notified the plaintiff and some of its customers that if they do not discontinue their practices, he will bring suit, and admits that there is an actual controversy between the parties within the meaning of the Declaratory Judgment Act.

5. On June 12, 1942, the defendant filed a motion for an order to stay proceedings in this cause, and set forth that prior to the date this complaint was filed, suit had been started in the Northern District of Ohio, Eastern Division, entitled, Johnston v. Stillwater et al., No. 21191. That litigation, which will hereafter be referred to as the Stillwater case, involves the same patent, and the original complaint is based upon the practice of the method described in the patent with materials furnished to the defendant in that suit by Atlas. On July 3, 1942, the defendant filed a motion to dismiss this complaint. These two motions were heard on July 8, 1942, and overruled, and the case was set for trial September 22, 1942.

6. At the time this case was filed, the product involved in this suit was not involved in the Stillwater suit. In August, 1942, defendant received information that the specific formula involved in this suit was sold to the defendant in the Stillwater suit by Atlas, and he immediately filed a motion to amend the complaint in the Stillwater suit to include the formula, method, and practice, involved in this suit. This motion to amend had not been granted on the date this case was submitted. Prior to the trial date, defendant notified this Court of the changed situation in the Stillwater case. However, it is clear that on the date this suit was filed, the formula involved in this suit was not involved in the Stillwater suit. The plaintiff here is not a party to the Stillwater suit, and it is not assisting in the defense thereof. At the time the complaint herein was filed, the subject matter and the parties were not the same as in the Stillwater suit, and a judgment entered therein would not settle the questions involved in this suit, and would not be binding upon the plaintiff.

7. In the Cleveland suit the Court found [42 F.Supp. 133], "The principal novelty of the plaintiffs' process is the use of soluble collars and liners as described and their treatment by a solvent, so that their contiguity creates a real union or homogeneous seal", and, "the success of the method adopted by the defendants was apparently due to the fact that the solvent which they used contained some petroleum derivative, such as gasoline, which caused a fusion of materials or a homogeneous seal."

8. The Atlas product, involved in this suit, consists of a solution of 50 per cent by weight of Cumar resin in 50 per cent by weight of nitroethane. It is used in connection with the collars and liners made from the plaintiff's GK Compound 160, consisting of a mixture of approximately 50 per cent by weight of asphalt, and 50 per cent of filler such as powdered slate. The joints formed by the use of the compound and adhesive involved in this suit differ materially from the joints formed in accordance with the method described in the patent, and the method involved in the Cleveland suit. Likewise, the process used by Atlas differs in material respects from the process used by the defendants in the Cleveland suit, and from the process described in the patent. There is no infringement.

9. The method followed by the plaintiff and the methods described in the patent and in the Cleveland suit are similar up to the point where the adhesive used by the plaintiff or the solvent used by the defendant are applied to the collars and liners. Thereafter, however, the method is different, and the result achieved is different. The active ingredient in the collars, asphalt, is not soluble in the active ingredient of the adhesive used by the plaintiff, nitroethane, and the joint formed by plaintiff's method is not a homogeneous joint, but the two pieces of pipe are bound together by the thin layer of Cumar resin which remains in the joint after the nitroethane evaporates. If a joint is made ac-

cording to the teachings of the patent or in accordance with the findings in the Cleveland case, the joint formed will be homogeneous, in that it will be impossible to distinguish between the asphalt that was originally in the collars and liners, and the asphalt that deposited out of the solvent used to produce the joint. On the other hand, the joint formed by the plaintiff's GK–160 is strikingly similar to the joint formed by the attachment of a flap on an envelope covered with adhesive and moistened and pressed against the other part of the envelope. It is true that sometimes the joints formed by the defendant's method will open up and permit the collar and liner to be separated in substantially · their original form. However, you do not get this result if time is given for the solvent to evaporate completely and there is a close contact between the collar and the liner. On the other hand, it is true that in breaking the joints formed by the plaintiff's method at times the adhesive works so effectively that the joint separates in either the collar or the liner, rather than in the adhesive. But that result is no different than you get when you tear the flap of an envelope open. If the flap is not pressed down, or if there is insufficient adhesive, or if the joint is not permitted to dry sufficiently, the envelope may be opened without tearing the paper.

10. After this case was heard and submitted, counsel were given the opportunity to submit additional briefs and proposed findings. Defendant renewed his contention that the penetrometer experiments used by his expert prove conclusively that the nitroethane is a solvent of the plaintiff's GK compound. If this was the only evidence in the case, it might be persuasive, but the testimony of other witnesses and the experiments conducted in open court convinced me, beyond a reasonable doubt, that nitroethane is not a solvent within the meaning of the patent or the Cleveland findings and judgment.

11. The defendant also requested a finding that the plaintiff is guilty of contributory infringement because it furnishes materials for the collars and liners, (GK compound), which can be used with a solvent to achieve the results described in the patent. In order to justify such a finding, I would have to find that the plaintiff not only furnished the materials in question, but it intended that they should be used by the purchaser to carry out the method prescribed in the patent. There is no evidence in this record to support such a finding. In his patent application, defendant specifically disclaimed any claim to the method of making the collars and liners and fastening them together by means of an adhesive. This is the method recommended by the plaintiff, and the only method in which its product, the GK Adhesive, can be used.

12. Although I do not deem it necessary for a decision, at the request of counsel for defendant, I further find, "that no acts by the defendant as charged in the complaint, were maliciously done."

Conclusions of Law.

■ 1. This is a case arising under the patent laws of the United States and this Court has jurisdiction.

■ 2. It appears from the record that the plaintiff is entitled to seek the relief prayed for, and it is the duty of the Court to proceed to judgment; and it has no right to delay the proceedings merely because another case is pending between other parties involving the same subject matter. Bliss Co. v. Cold Metal Process Co., 6 Cir., 102 Fed.2d 105.

■ 3. The claims of the patent in suit are limited to the use of an evaporable solvent which renders the collar and the liner band plastic and causes them to unite and thereby join in a homogeneous seal. The plaintiff's use of an adhesive to unite the two sections of pipe is not an equivalent.

"We have, however, consistently held to the rule that 'where the claim defines an element in terms of its form, material, location or function, thereby apparently creating an express limitation, where that limitation pertains to the inventive step rather than to its mere environment, and where it imports a substantial function which the patentee considered of importance to his invention, the court cannot be permitted to say that other forms, which the inventor thus declared not equivalent to what he claimed as his invention, are nevertheless to be treated as equivalent.'" Valjean et al. v. Perfection Stove Co., 6 Cir., 103 F.2d 60, 62.

■ 4. The use of plaintiff's Slipjoint GK sealing material comprising asphalt and mineral filler, in combination with plaintiff's GK Adhesive involved in this suit, made from a solution of Cumar resin

952

in nitroethane for the joining of bell and spigot pipe sections, does not infringe any of the claims of the U. S. Patent No. 1979470, in suit.

5. Sale by plaintiff of its Slip-joint GK Joint Sealing Compound · and its instructions to purchasers to use it in conjunction with its GK Adhesive 160, for use in the joining of bell and spigot pipe sections, does not constitute contributory infringement of any of the claims of the patent in suit. Charles H. Lilly Co. v. I. F. Laucks, Inc., 9 Cir., 68 F.2d 175.

6. A judgment shall be entered for the plaintiff in accordance with these findings, with costs, and shall be submitted for entry Monday, November 9, 1942, at 11 A. M.