## JOHNSTON v. ATLAS MINERAL PRODUCTS CO. OF PENNSYLVANIA.

### No. 9526.

Circuit Court of Appeals, Sixth Circuit.

Feb. 7, 1944.

F. O. Richey, of Cleveland, Ohio (F. O. Richey, H. F. McNenny, J. D. Douglass, and Richey & Watts, all of Cleveland, Ohio, on the brief), for appellant.

George J. Harding, of Philadelphia, Pa. (George J. Harding and Daniel Lowenthal, both of Philadelphia, Pa., and Whittemore, Hulbert & Belknap and Clarence B. Zewadski, all of Detroit, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Suit under the Declaratory Judgment Act. Sec. 274d of the Judicial Code, 28 U.S.C.A. § 400.

Appellant, James C. Johnston, was the patentee-owner of Patent No. 1,979,470 for a "Method of Joining Bell and Spigot Pipe Sections." The patent was previously adjudged valid and infringed in a suit by Johnston's licensees against certain users of products manufactured by The Atlas Mineral Products Company of Pennsylvania, appellee here and herein called Atlas. See Universal Sewer Pipe Corp. et al. v. General Constr. Co. et al. D.C., 42 F.Supp. 132. That suit, herein called the Cleveland case, because it was brought there, was defended by Atlas on behalf of the users of its products. Following the decree in that case, Atlas changed one of the materials which it previously sold for use in the method adjudged to infringe.

Nevertheless, Johnston insisted that the manufacture and sale by Atlas of its "Slip-

joint G-K" Compound and its "latest Slip-joint G-K Adhesive for preparation and use with slip-joint pipe having preformed collars and liners" contributorily infringed its patent and that their use was a direct infringement thereof, and threatened Atlas with suit. Atlas thereupon brought this suit against Johnston and prayed for a declaratory judgment to the effect that the manufacture and sale of its Slipjoint G-K Compound and Slipjoint G-K Adhesive in connection with the described process did not constitute contributory infringement and that its use in the joining of bell and spigot pipe by sections did not constitute direct infringement. Johnston traversed the allegations of the bill and in a counterclaim alleged that all questions of validity and infringement were res adjudicata and prayed for an injunction and an accounting, etc., against Atlas.

The court did not determine the issue made on the counterclaim and that feature is not before us. On the main issue the court found that the patent claims, two in number, were not infringed by the use of the G-K Slipjoint Compound and the latest G-K Slipjoint Adhesive, and that the sale of these materials did not contributorily infringe, and entered a decree in accordance.

The court denied two preliminary motions made by Johnston, viz.—(1) to stay the proceedings pending the outcome of a suit instituted by him in the District Court for the Northern District of Ohio against the Stillwater Clay Products Company, a customer of Atlas, for infringement of its patent, on the ground that the decision in that case would determine the issues here; and (2) to dismiss the complaint on the ground, among others, that the rights of the parties were capable of determination in the Stillwater suit and therefore there was no "actual controversy" such as would give the court jurisdiction to entertain the present cause.

In its Findings No. 6, the court found that "at the time the complaint herein was filed, the subject matter and the parties were not the same as in the Stillwater suit, and a judgment therein would not settle the questions involved in this suit, and would not be binding upon the plaintiff."

Upon the record as we find it, we are not authorized to go behind this Finding No. 6 and even if it were clear that the parties and subject matter were the same in both suits, it does not necessarily follow that appellee would be relegated to the Stillwater suit. E. W. Bliss & Co. v. Cold Metal Process Co., 6 Cir., 102 Fed.2d 105, 107; Rule 57, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Atlas having conceded that it is bound by the adjudication of validity in the Cleveland case, we are concerned only with the question of infringement. There are two claims in issue. Typical claim No. 1 follows:

"1. The method of joining bell and spigot pipe sections consisting of molding a collar of soluble joint sealing material about the spigot end of one section, molding a lining band of like material within the bell end of another section within which the collar equipped end of the first section may be fitted, then applying an evaporable solvent to the surfaces of the collar and lining band to render them plastic and subsequently fitting them together to cause said plastic surfaces to unite and congeal incident to evaporation of the solvent therefrom, thereby joining the collar and lining band in a homogeneous seal."

In the Cleveland case the court described the patent as follows [42 F.Supp. 133]:

"The patent covers a process for sealing joints of sewer pipe. A collar is placed upon the spigot end of one sewer pipe, and a liner is placed in the bell of the adjoining pipe, both being constructed of soluble material. Such collars and liners are constructed over molds which give them a wedge shape or mutually sloping surfaces so that they can be fitted together, as a cork fits in a bottle. The patented process provides for the treatment of the surfaces of the collar and liner with a solvent just before placing them together. The solvent softens the surfaces and renders them plastic [so] that upon evaporation of the solvent the collar and liner form a homogeneous seal."

The testimony of Mr. Wirtz, President of Atlas, indicates that after the decision in the Cleveland case, Atlas made no substantial change in the G-K Slipjoint Compound, the material used in precasting the liners and collars upon the pipe sections. The Compound was made up fifty percent of asphalt and fifty percent of a mineral flour, which might be powdered clay or slate flour. Wirtz testified that at the time of the hearing Atlas was using slate flour but whether slate or clay flour was used is immaterial because Johnston expressly

states that he makes "no claim to any specific joint forming composition."

Appellant of course wrote his own claims. He wrote into Claim 1 the following element or combination of elements, to wit, the application of "an evaporable solvent to the surfaces of the collar and lining band to render them plastic and subsequently fitting them together to cause said plastic surfaces to unite and congeal incident to evaporation of the solvent therefrom, thereby joining the collar and lining band in a homogeneous seal."

We are not dealing with a basic or generic patent. The specification refers to the invention simply as an improvement in pipe joints. The appellant has clearly limited his claim and he is bound thereby. Fowler v. Detroit Bedding Co., 6 Cir., 47 F.2d 752, and cases there cited. The question here, as we see it, is, whether the adhesive slipjoint G-K 160 now manufactured by Atlas contains elements which constitute "an evaporable solvent" having the effect set forth in that portion of the claim just quoted.

In the Cleveland case, the adhesive was made up fifty percent naphtha, forty-eight and one-half asphalt and one and one-half Cumar resin. The use of this compound was held in that case to infringe and the court said that its successful use "was apparently due to the fact that solvent which they used contained some petroleum derivative, such as gasoline, which caused a fusion of elements, or a homogeneous seal. * * *"

In its present adhesive, which goes under the trade name "Slipjoint GK-160," Atlas claims to have eliminated all solvents of the asphalt in the liner and compound. The composition of the product now used by Atlas is fifty percent nitroethane and fifty percent Cumar resin. If these materials are not evaporable asphaltic solvents, then Atlas' contention has strong support. Dr. Payne, Research Chemist for Atlas, testified:

"No. 160 is a liquid cement which we paint on the joints, on both this collar and this one, and we shove them together, just as we did before. But, the difference is that it does not soften nor render the surfaces of the collar or liner plastic, and it leaves a layer of Cumar resin deposited between the collar and the liner as a cement. In other words, it functions just as any true cement or adhesive would function. There is no homogeneity; there is no rendering of the collars themselves plastic to form this homogeneous seal by uniting and congealing."

He further testified that the nitroethane did not tend to soften or render plastic the surfaces of the collars and liners of the G-K Slipjoint Compound; that the Cumar resin was a solid and did not so act and when it was in solution in the nithroethane it did not so act.

Miller, an asphalt technologist, testified that no ingredient in the 160 adhesive would soften or render plastic surfaces formed with G-K Compound. He conducted demonstrations and experiments in open court and broke open joints previously united with various materials. His first experiment was with cubes of Atlas G-K Compound. Some were immersed in nitroethane, others in gasoline, and still others in 160. He pointed out that within two or three minutes material dropped off in a sort of shower from the cubes placed in the gasoline; while there was no shower from those deposited in the nitroethane, the active material in the 160. The court rubbed the latter cubes and found that they were not rendered plastic. The court also placed two cubes which had been in the gasoline together and noted that they tended to adhere strongly, and observed that a cube placed in nitroethane was less plastic than one that had not been in the nitroethane. Counsel for Atlas observed that the cubes dipped in 160 had not been rendered plastic.

Miller noted that the surfaces of cubes which had been placed in nitroethane would not adhere, while those treated with 160 would because of the Cumar resin left between them after the evaporation of nitroethane, a solvent for the Cumar resin. An experiment was conducted by placing 160 between glass slides, which were impervious to dissolving action.

Dr. Payne further testified as to what occurred at an inter partes gathering at which Johnston was present. Three joints, two from experimental and one from commercial stock, were treated with nitroethane, gasoline and 160 and were then joined by Payne, who pressed his full weight upon them. Two joints were broken in the courtroom and were inspected by the court. The joints put together with nitroethane parted without breakage and with little effort. The collar and liner which were painted with gasoline appeared

to have become one and the joint which was treated with 160 had to be broken and Dr. Payne pointed to a thin dividing layer of Cumar resin between the collar and the liner. Certain other joints, made ex parte by Dr. Payne, gave the same results.

Appellant attacked the results of these experiments. He made the claim that nitroethane would dissolve the G-K Compound and an experiment was performed which showed a discoloration of nitroethane placed with the G-K Compound and a thin film of 160. He deduced that nitroethane would in time dissolve the asphalt in the compound. In answer to this, Atlas asserted that there might be coloring matter in the asphalt.

Dr. Von Fischer, appellant's expert, testified to experiments with a penetrometer upon samples of G-K Compound treated with 160, the experiments being controlled as to time and temperature. He stated that after twenty-four hours the tests showed a softening of surfaces treated with 160, which increased with time, but it was pointed out for Atlas that there was no record of the amount of 160 used or of its thickness on the experimental lump, or how the application compared with the thin application used on construction.

Appellant testified that when the joints are painted with the material for the purpose of softening the collars, it remains active until it has dried out. He also said that in practice joints are put together with a twisting motion and then pressed together hard. Joints painted with 160 and twisted together were cracked by appellant in the courtroom and showed that they made good joints. He criticized the making of the joints used and introduced by Atlas, with the statement that when Dr. Payne used gasoline he "slopped it on," but when he used 160 he painted very carefully, and with the nitroethane he used one dip of a small brush to paint the whole spigot and part of the bell. He further pointed out that Dr. Payne did not use the twisting action in his experiments nor the pressure used in ordinary practice. He also thought that the results of Dr. Payne's experiments were weakened by the presence of die coating on the liner material to a degree not found in ordinary practice.

Appellant testified that although in his own experiments with 160 he could not perceive any softening to the touch, yet in breaking pipes that had been joined with it, he found areas that convinced him that a solvent action had taken place and that this led him to have the penetrometer tests made.

■■ We think it unnecessary to make further recital of the testimony. The District Judge heard the evidence and saw the witnesses upon the stand. He observed their manner and demeanor and had the opportunity to test their knowledge or lack of knowledge of the matters about which they testified. In addition, he had the benefit of the experiments carried out in his presence. Keeping in mind that infringement is a question of fact [Aluminum Co. of America v. Thompson Products Co., 6 Cir., 122 F.2d 796, 799] we think that we are peculiarly dependent upon the trial judge for the weight to be attached to the evidence. Stubnitz-Greene Spring Corp. v. Fort Pitt Bedding Co., 6 Cir., 110 F.2d 192, 196; LaBour v. Gorman-Rupp Co., 6 Cir., 108 F.2d 279, 281. Since the court reached the conclusion that he could not "possibly hold that asphalt is soluble in nitroethane," the active element of the 160 adhesive, and since there is no evidence that convincingly rebuts that conclusion, we think it must be upheld. There was a finding of fact, (8), that there was no infringement of appellant's patent which we are not at liberty to set aside unless it was clearly erroneous. Rule 52 of the Rules of Civil Procedure.

■ Finally, we do not think that there was contributory infringement in putting out a material, the G-K Compound, which might be used by a purchaser with gasoline or other material in an infringing manner. See Sandusky Foundry & Mach. Co. v. DeLavaud, 6 Cir., 274 F. 607, 610. To constitute contributory infringement, the device or material capable of infringing use must be sold with the intent that it shall be so used.[1] See Walker on Patents, 6th ed., Vol. I, Sec. 457. Atlas developed its own material, which it thought did not infringe and which we hold does not infringe, and the marketing of the compound must have been with an eye to its use with the 160 and not with evaporable solvents, which Atlas admits it cannot use or sell under the Cleveland decision.

The decree is affirmed.

---

[1] This conclusion must be reached even without the aid of the limitation now imposed upon the doctrine of contributory infringement by Mercoid Corp. v. Mid-Continent Investment Co. et al., 64 S.Ct. 268, decided January 3, 1944.