### WESTINGHOUSE ELECTRIC & MFG. CO. v. SIMMS MAGNETO CO.

(District Court, D. New Jersey. January 6, 1922.)

1. Patents ⊚═328—1,081,731, for electric self-starter, valid and infringed.

The Foster patent, No. 1,081,731, for an electric self-starter for internal combustion engines, *held* not anticipated, valid and infringed.

2. Patents ⊚═259—Knowingly supplying parts for infringing device "contributory infringement."

Defendant, which supplied motors and switches to a manufacturer of motor cars, knowing that they were used in making starting devices for such cars, which devices, when completed, were an infringement of complainant's patent, *held* a contributory infringer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contributory Infringement.]

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity.   Suit by the Westinghouse Electric & Manufacturing Company against the Simms Magneto Company.   Decree for complainant.

Decree reversed 286 Fed. 562.

Drury W. Cooper and Thomas J. Byrne, both of New York City, for plaintiff.

Theodore McC. Marsh, of Newark, N. J. (R. A. Parker and E. J. Stoddard, both of Detroit, Mich., of counsel), for defendant.

LYNCH, District Judge.   The plaintiff alleges that the defendant has infringed its letters patent No. 1,081,731 granted to Alfred P. Foster for a device for *starting* internal combustion engines, whether employed on automobiles, boats, aeroplanes, or elsewhere.   The device is what is commonly known as a "self-starter."

The defendant does not manufacture self-starters.   It does, however, supply the Maxwell Motor Car Company with electric motors and switches, which are utilized by that company in the making up or assembling of starters for its Maxwell motor cars.   It does not seem to be seriously questioned that the *complete* Maxwell starter embodies the device of the patent in suit.   The issues are whether the plaintiff has a valid patent, and, if so, whether the *supplying* of motors and switches to the Maxwell Company constituted the defendant a contributory infringer.

[1] When automobiles first came into use, it was necessary for a person in order to start the engine to crank it by hand.   This was the general practice until about the year 1910, when *electric* starting devices or self-starters came into quite general use.   They all comprise an electric motor and accessories.   The purpose of an electric starter is to put in operation the engine which propels the automobile or boat or aeroplane, and when it has done this it is called upon to serve no further purpose.   So a means of disconnecting the starting motor from the engine, after the engine has started, was, of course, desirable.   Before the advent of electric motor starters, the use of spring starters and compressed air starters was attempted; but they never came into general use.   Foster's plan was to put the operation of this starting device, as well as its disconnecting, under a pedal or lever, which was straight-acting, and which would spring back when released.   His idea, in a general way, was to have one part of his device which, when operated, would by a downward movement first enmesh the connecting gears between his electric motor and then turn current into his motor.   The current would energize the electric motor, which would cause the engine to pick up or start and then by a reverse movement or release, as soon as the engine had picked up, the current would be taken out of the motor, or turned off, and the motor would become automatically disconnected.   The device is of simple construction and is easily operated.

The claims in suit are as follows:

"2. A starting device for internal combustion engines including in combination a flywheel and a motor normally operatively disconnected; an electric circuit normally open and adapted, when closed, to energize the motor;

means under the control of the operator for operatively connecting the flywheel and motor and thereupon closing the circuit; and automatic means for opening the circuit and thereupon operatively disconnecting the flywheel and motor."

"5. A starting device for internal combustion engines, including in combination an engine and a motor normally operatively disconnected; an electric circuit normally open, and adapted, when closed, to energize the motor; means under the control of the operator for operatively connecting the motor with the engine, and thereupon closing the circuit and automatic means for opening the circuit, and thereupon operatively disconnecting the motor and engine.

"6. In a starting device for internal combustion engines, a motor; mechanism connected therewith and operated thereby, and including a movable member adapted to be operatively connected with an engine; an electric circuit normally open, and adapted, when closed, to energize the motor; means under the control of the operator for operatively connecting the movable member of the mechanism with an engine, and thereupon closing the circuit and automatic means for opening the circuit, and thereupon operatively disconnecting the movable member of the mechanism from an engine.

"7. A starting device for internal combustion engines, including in combination an engine and a motor normally operatively disconnected; means under the control of the operator for operatively connecting the motor with the engine, and thereupon energizing the motor and automatic means for de-energizing the motor, and thereupon operatively disconnecting the motor and engine."

With respect to the prior art the defendant has called the attention of the court to a very large number of patents. Some of them relate to electric starters for engines, while others have to do with air, spring and pneumatic devices. It strikes me that spring starters and air starters are distinctly different than electric starters. There is a different series of parts, and perhaps a different kind of elements. It appears that they made no impression on the art whatever. Therefore I do not think they can be read on the terms of claims which distinctly call for electric circuits, the possible exception being as to claim 7, which will be considered and disposed of hereinafter. So, setting aside those devices of the prior art which had spring motors and compressed air motors, I shall take up those which included electric motors.

One of these is the patent to Marx, No. 854,060. What Marx invented was a motor for starting a sewing machine. This motor was fastened to the ceiling or some part of the wall, and was connected by belting with the sewing machine or other device it was intended to run. There is neither flywheel nor combustion engine. There are no gears between a motor and a flywheel. Not only that, the order of procedure of the Marx device is exactly opposite to that specified in the patent in suit. In other words, Marx first closed a switch, energized his motor, and then coupled it up with the clutch. I cannot agree to the proposition that the belt and pulley arrangement of the Marx device should be regarded as an anticipation.

Next, the patent of Lahmeyer, a German patent. Lahmeyer's device is very complicated. He was apparently attempting to solve the problem of easily starting a very large stationary engine. Whether his device has been used in the starting of automobile engines, boat engines, or aeroplane engines I am unable to ascertain. An examination discloses that it has two pulleys, three gears, a lever, a segment, a

lever arm, and a hand wheel. While it is true that its large flywheel and the motor are normally operatively disconnected, the difficulty, it seems to me, is that what he was dealing with was an entirely different proposition.

As to the Galloway British patent, No. 6,284, no electric motor or circuit is contemplated, nor is anything said about the succession of operations by the admission of the gears in the energizing of the motor. Nothing is said about a single lever or pedal for performing both operations, or means for automatically restoring the parts to their original position.

I have examined the other patents of the prior art submitted by the defendant. Many of them contain elements mentioned in the claims of the patent in suit. There are flywheels, motors, gears, electric currents, levers, etc. All of these things, of course, are well recognized elements. There are presented some patents which relate to starting automobile engines, but as to them the elements do not correspond with the elements of the claims under review. What I have failed to have demonstrated to my satisfaction is that some one in the prior art has taken all of the elements that Foster took, and in the same way utilized them in starting the combustible engines of automobiles, boats, and aeroplanes.

As to claim 7: An *electric* motor is not specifically mentioned. But the words "energizing the motor" and "de-energizing the motor" are used. I think energizing and de-energizing in the art means a turning on and off of current—the use of an electric motor.

All of the claims in my opinion should be sustained.

[2] The remaining question is whether the defendant is a contributory infringer. In the case of General Electric Co. v. Sutter et al. (C. C.) 186 Fed. 637, Judge Buffington said:

"The legal principles governing contributory infringement are clear. Contributory infringement exists where one knowingly concerts or acts with another in an unlawful invasion of a patentee's rights. If such assistance is given by furnishing an essential part of an infringing combination and the part furnished is adapted to no other than an infringing use, such contribution makes him a contributory infringer. On the other hand, if the part furnished is adapted to other and lawful uses, in addition to infringing uses, then an intent to furnish for infringing use must be established before the furnisher can be held a contributory infringer."

Motors and switches formed a most essential part of the infringing combination which made up the starter of the Maxwell motor car. These motors and switches were adapted to uses other than infringing uses. The issue, therefore, is whether there has been established on the part of the defendant an intent to furnish for an infringing use.

The business of supplying this particular switch to the Maxwell Company started early in 1915, under a contract which provided for the making of devices of that particular character only. These switches were supplied with the knowledge that they were to be used by the Maxwell Company in its starting and lighting system. From the beginning of the business the defendant knew what these supplies were being used for, and in order to enlarge its own business, in that and other directions, advertised the fact that it was the maker of the start-

ing system for the Maxwell Company. These facts were admitted by Mr. Anderson, the president of the defendant company.

Moreover, in 1916, there was a formal complaint or charge of infringement which the defendant admits receiving. Notwithstanding this notice, the supplies continued thereafter for at least three years. If under this set of facts and circumstances contributory infringement is not spelled out, I am unable to conjure up in my imagination such a case.

The plaintiff is entitled to a decree.