## SIMMS MAGNETO CO. v. WESTINGHOUSE ELECTRIC & MFG. CO.

(Circuit Court of Appeals, Third Circuit. December 27, 1922.)

### No. 2857.

Patents ⊙⇒328—1,081,731, for electric self-starter, claims 2, 5, 6, and 7, held void for anticipation.

The Foster patent, No. 1,081,731, for an electric self-starter for internal combustion engines, claims 2, 5, 6, and 7, which are broad claims, *held* invalid for anticipation and description in prior publications.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suit in equity by the Westinghouse Electric & Manufacturing Company against the Simms Magneto Company. Decree for complainant (286 Fed. 558), and defendant appeals. Reversed and remanded.

Frederick P. Fish, of Boston, Mass., Elliott J. Stoddard, of Detroit, Mich., and Clarence D. Kerr, of New York City, for appellant.

Drury W. Cooper and Thomas J. Byrne, both of New York City, for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case, the court below, filing an opinion reported at 286 Fed. 558, entered a decree adjudging claims Nos. 2, 5, 6, and 7 of patent No. 1,081,731, granted December 16, 1913, to Alfred B. Foster were valid and infringed. Thereupon the defendant took this appeal.

Reference to the opinion above referred to saves a' needless restatement of the case, which we may say concerns electric self-starters for automobiles. After due consideration, and for reasons we hereafter state, we are of opinion the court committed error in not adjudging the claims in question invalid.

While a number of other important and interesting questions are involved, the ground on which we reverse, namely, invalidity, is basic, and, with our holding against the plaintiff in that regard, a discussion of the other questions is futile. The case, as we have said, concerns electric self-starters for automobiles, and the gist of the present patent's disclosure was a mechanism wherein pressure on the foot pedal

served to couple together, by enmeshing, the gearing of the electric motor with the gearing of the engine of the auto, and at the same time and by the same pedal action there was opened the current in the starting electrical motor.

Conceding, for present purposes, but not deciding, that Foster's disclosure was such as to justify the specific claims, not now before us, of his patent, for the particular mechanism he disclosed and for substantial equivalents thereof, we are still of the opinion that, in view of certain publications, to wit, Lahmeyer German patent 145,018 (Rec. p. 474), Carpenter & Diederich text-book (Rec. pp. 485–487), German Engineering Journal (Rec. p. 517), and High Power Gas Engines (Rec. p. 493), the claims in question should not have been granted and are invalid. In this connection it is due the Patent Office to say that these publications were not called to its attention or considered when Foster's patent was applied for and granted.

Without entering upon a discussion of electric starters generally, we note that the device of Foster pertained to mechanism employing enmeshing teeth, and that in starting such mechanism there must be a substantial tooth enmeshing or engagement before the mechanism is started to revolve. The operation of Foster's mechanism is thus described in his specification:

"The lever *10* is fulcrumed at *13* on bracket *4a*, being slotted at its lower end to engage stud *11* on collar *12* loosely mounted and longitudinally movable on sleeve *8* and abutting on the hub of gear *7*; said lever *10* has its upper end in the form of a treadle *14*."

" *   *   * To start the engine the operator places his foot upon treadle *14* and depresses said treadle, *thereby forcing gear 7 into engagement with gear 2a*, compressing spring *9* and thereupon forcing contact *20* into engagement with contact *19*, thereby closing the circuit, starting the motor and, through the gearing described, starting the fly wheel. As soon as the engine is started, the operator removes his foot from the treadle and spring *9* separates (indirectly) the contacts, opens the circuit and disengages gears *7* and *2a*, permitting the motor to come to a state of rest."

From this it will be seen that the single action of the foot pedal in causing a synchronizing enmeshing of the tooth parts and the simultaneous functioning of the motor current constituted the gist of Foster's device, and that he was granted claims not here involved of which the specific parts of his mechanism were combining elements. Seeing, then, he thus obtained patent monopoly for what he gave the art, was he entitled to blanket it by the claims here in issue, which are very broad and nonspecific in character?

In view of the publications cited above, we think not, for in them we find, seven years before Foster, not only the printed publication of this broad conception, which forms a statutory bar to a subsequent patenting thereof, but as further emphasizing the significance of such printed publication, we find the embodiment of such publication in practical, successful, operative form.

Turning to the Lahmeyer German patent, No. 145,018, November 21, 1902, we have a description of a self-starter, not for automobiles, it is true, but for large gasoline engines, and within the purview of Foster's problem, when he said in his specification:

"My invention relates to a cranking device for use in starting internal combustion engines, whether employed on automobiles, boats, aeroplanes, or elsewhere."

The Lahmeyer starter is of the same general type as Foster, in that it uses gear mesh. The gears mesh before the machinery is started, and the same movement that enmeshes the gear causes the electric motor current to function. Availing ourselves of the accompanying lettered reproduction of the drawing of the patent as furnished in the brief of plaintiff's counsel, we note that $Z$ is the fly wheel of the engine. An electric motor $M$ has upon its shaft a pulley $S^1$ which drives

FIG. 1

OFF POSITION
GEARS DEMESHED —
CONTACTS OPEN

through a chain drive pulley $S^2$, on the central shaft, to which is attached $Z^2$ which meshes with gear $Z^3$, which is journalled on lever $H$ pivoted on the central shaft. An arm of lever $H$ is connected by spring $f$ to a slide which has rack teeth engaging with a pinion $Z^1$ which is operated by a handle $h$.

In operating the starter, the operator first throws the arm $h$ to the right, which turns the gear $Z^1$ in the direction of the arrow, and thereby carries the rack slide $m$ to the left, which pulls on spring $f$, and thereby moves gear $Z^3$ to the right and into enmesh with flywheel $Z$. As

the arm $h$ is moved further to the right, it passes the rheostat resistance $A$. When slide $m$ is thrown fully to the left, pawl $k$ drops into a notch in the stationary upright $a$ and holds the parts in position until the engine starts. When the engine starts, it carries gear $Z^3$ to the left and thereby brings the end of lever $H$ into engagement with pawl $k$ on rack $m$. The spring $f$ then pulls slide rack $m$ to the right, which turns gear $Z^1$ in an anti-clockwise direction and carries the arm $h$ to the left, to break the circuit to motor $M$, with a consequent automatic disengagement of the enmeshed gears of the motor and engine.

Selecting, for example, from the broad claims here in issue, claim 2,[1] it will be seen it reads both literally and functionally on the Lahmeyer device. Taking element, "a starting device for internal combustion engines including in combination a flywheel and motor normally operatively disconnected," we find in Lahmeyer's starter the flywheel $Z$ and the motor $M$ normally disconnected. The next element, "an electric current normally open and adapted, when closed, to energize the motor," is also present in Lahmeyer. The third statement, "means under the control of the operator for operatively connecting the flywheel and motor and thereupon closing the circuit," is in Lahmeyer in the handle $h$ and its connected mechanism, the pinion $Z^1$, the rack $m$, spring $f$ and pinion $Z^3$, which first cause the gears to enmesh and then close the circuit to start the motor. The third element, "automatic means for opening the circuit and thereupon operatively disconnecting the flywheel and motor," is embodied in the self-acting disengagement of Lahmeyer already described, which is effected by the movement of the flywheel.

Finding, as we do, this statutory bar of a self-explanatory, sufficient, prior publication of Foster's disclosure, we note, as evidencing the inherent rightness of the conclusion we have reached, that the further publications, as noted below, were made, not only of the fact of Lahmeyer's disclosure, but of its worth and general use. In Carpenter & Diederich's text-book on "Internal Combustion Engines," published in New York in 1908, it is said:

"A simpler way is to gear an electric motor to a rack on the fly-wheel as shown in Figs. 13–39. When the engine picks up, the motor is automatically thrown out of gear. This scheme has the merit of great simplicity, absolutely no change in the valve operation of the engine being required for starting. * * * The entire labor connected with this starter, therefore, consists of the attendant's turning the handle $h^2$ of the starting box to the right to start the motor. Beyond this no further attention is required, the action being entirely automatic."

In the German Engineering Journal of 1907, it is said:

"The company of Felton, Guilleaume-Lahmeyer at Frankfort manufacture such a starting machanism by which the motor with a single hand lever is set into motion and is brought into connection with the cog rim of the fly wheel, while the breaking of the connection is automatically accomplished as

---

[1] "A starting device for internal combustion engines including in combination a flywheel and a motor normally operatively disconnected; an electric circuit normally open and adapted, when closed, to energize the motor; means under the control of the operator for operatively connecting the flywheel and motor and thereupon closing the circuit; and automatic means for opening the circuit and thereupon operatively disconnecting the flywheel and motor."

soon as the fly-wheel has a definite speed of rotation. * *. ❞ It is in use on the docks of Harland and Wolff in Belfast and in the electrical factory of Charlottenburg."

We are therefore of opinion that the broad claims of Foster here in issue were mistakenly allowed, and must be held invalid, and the case remanded to the court below, with instructions to enter a decree adjudging the claims sued on invalid and dismissing the bill.