**HEMPHILL CO. v. JORDAN.**

Civ. No. 387.

United States District Court
M. D. North Carolina.

Aug. 2, 1949.

Brooks, McLendon, Brim. and Holderness, Greensboro, N. C., Burgess, Ryan and Hicks, New York City, John S. Bradley, Pawtucket, R. I., for plaintiff.

C. Clifford Frazier, Greensboro, N. C., Joseph G. Denny, Jr., Philadelphia, Pa., for defendant.

HAYES, District Judge.

This is a civil action to enjoin the defendant from infringing claims 23 and 25 of patent No. 1,872,760 and claims 18, 24, 25 and 43 of patent No. 2,146,750 and for an accounting.

These patents disclose improvements in circular knitting machines by which a true.

wrap stripe may be applied in different patterns for ornamental purposes to seamless hosiery as it is being knit on circular knitting machines. Such wrap stripes are made by wrapping the striping thread around a selected needle or group of needles in the needle circle of the circular knitting machine, the wrap threads then being knitted with the body yarns into the fabric of the sock so that the wrap threads will appear on the exterior of the sock.

In the illustrative mechanism of the patents in suit, the wrapping of the selected needles is done by a small rotary disc carrying eyelets through which the wrap threads pass to the needles and the sock being knitted. This disc, called a "wrap head", is mounted eccentrically to the needle cylinder on a vertical shaft and is geared to turn one-to-one with the needle cylinder. Because of the eccentric position of the wrap head, the one-to-one gear ratio and the size of the wrap head disc in relation to the size of the needle circle, the wrap thread is wrapped once around the selected needles for each turn of the needle cylinder and a single stripe is obtained from each thread fed from the respective eyelets.

As the wrap threads are fed to the selected needles, they are looped around a crescent shaped finger known as a wrap horn which is located inside the needle circle. The wrap horn extends from a plate-like member that supports yarn engaging means consisting of a binder and cutter inside the needle circle. This yarn engaging means acts on the main body yarns when such yarns are changed. The wray threads are not cut and do not enter this binder and cutter at any time. The wrap horn extends in parrallelism with substantially a semi-circle of the needles in the needle circle and as the needle cylinder rotates during the knitting operation, the selected needles about which the wrap threads have been wrapped draw the wrap threads along the wrap horn to a point where they pass off of the end of the wrap horn. Since the wrap threads are not severed during the knitting opera-

tion, they must pass beneath the portion of the plate supporting the binder and cutter upon leaving the end of the wrap horn. The wrap horn prevents the wrap threads from getting into needles other than those that have been selected and controls the tension on the wrap threads so that they will not be drawn into the fabric or too tightly about the selected needles.

Patent 1,872,760 is a continuation of patent 1,702,608 and the applications were copending in the Patent office. '760 discloses an improvement over '608 in that the wrap horn and binder plate are both made substantially semi-circular. The end of the wrap horn is brought closely adjacent to the knitting point to give greater assurance that the wrap threads will not get below the latches of the selected needles or into other needles and at the same time maintains control of the tension on the wrap threads until they reach the knitting point and produce a more effective decoration. The binder plate and wrap horn being substantially semi-circular and the end of the horn being brought close to the binder plate facilitates the wrap threads passing beneath the binder plate, which is essential, as they pass off at the end of the wrap horn.

The disclosures of patent '608 are not prior art to the '760 patent in suit since the applications were copending. Claims 23, 24 and 25 of '760 are specifically directed to a substantially semi-circular horn and claims 23 and 24 to a substantially semi-circular binding plate neither of which is disclosed or claimed in '608; these claims do not read on '608 and there is not double patenting as between them.

Patent 2,146,750 disclosed further improvements on the mechanism of patent '608. In circular knitting machines of the type involved here a latch or carrier ring forms a circular wall extending around the upper part of the needle circle, and serves to prevent accidental and unintentional closing of the latches of the knitting needles. Because of the eccentric mounting of the wrap head of the patents in suit and the necessity for locating this wrap

head near enough to the tops of the needles to insure the wrapping of the selected needles, it is necessary to cut away a portion of this latch ring wall. However, during reciprocatory knitting, at which time the wrap head is raised, some of the needles are positioned so that their latches may be closed at such cut-away portion. To prevent this, patent 2,146,750 in suit provides mechanism by which the raising of the wrap head is accompanied by the automatic moving of an arcuate member or gap closer into position to close the gap made by such cut-away portion in the latch ring, and for automatically removing the gap closer when the wrap head is lowered into operative position.

Each of the claims in suit describes the combinations of mechanism previously mentioned.

Prior to the commencement of the present action, defendant made and sold parts and combinations of parts by which a non-wrap knitting machine could be converted into a machine capable of producing wrap stripes, which such knitting machine could not do before such conversion. In some instances, the defendant had so converted knitting machines in his shop at High Point, North Carolina. Defendant had also supplied sets of such parts with the knowledge and intention that such parts would be used in such conversion of knitting machines.

The knitting machine PX-9 was converted into a wrap stripe knitting machine by means of the parts made by the defendant and has a vertical shaft eccentric to the needle cylinder. On this shaft is a disc or wrap head adjacent the needles when the head is in operative position. The shaft is geared one-to-one with the needle cylinder so that threads, fed through the wrap head, will wrap selected needles in identically the manner of the mechanism shown and claimed in the patents in suit. A new cutter and binder plate has been substituted for the binder plate originally on the machine before conversion. When installed, this new plate is cut away so that the binder plate and the horn are each substantially a semi-circle with the end of the horn being located close to the knitting point and closely adjacent the edge of the plate.

To close the opening made in the latch ring to accomodate the wrap head disc when it is in operative position, defendant provides a ring member with an opening therein and mechanism by which this opening is automatically located at the opening in the latch ring when the wrap head is in operative position and whereby a solid part of the ring is automatically located at such opening when the wrap head is raised to inoperative position. This is structurally and functionally the same and is for the same purpose as the swinging arcuate bar shown in patent No. 2,146,750 and is the mechanical equivalent thereof.

None of the prior art patents cited by defendant anticipates the claims in suit. Some of them show some of the individual parts of the mechanisms of the patents in suit but they do not show the combinations described and claimed in the illustrative claims.

Knitting machines of the prior art, including those to which defendant's parts were applied, were capable of making a so-called "mock" wrap stripe, but such "mock" wrap stripe is not the kind of wrap stripe produced by the machines of the patents in suit and by the machines as converted and used by defendant. Such "mock" stripe necessitates a large waste of thread and labor as compared with the true wrap stripe produced by the patents in suit and gives a less desirable effect in the ornamentation of the stocking.

The defense that plaintiff had made and sold machines embodying the subject matter of the claims in issue of the 2,146,750 patent in suit prior to February 3, 1932 (or more than two years before the application for this patent was filed) has not been established with the certainty that is required of proof to invalidate a patent.

The machines sold to Huntley Jackson Co. by plaintiff in 1931 did not have a gap closer on them (Ward Dep., p. 46; Hutton Dep., pp. 79–80) and the first machines which had a gap closer on them were sold

to the Huntley Jackson Co. by plaintiff in March of 1932.

The 86,062 machine, the sale of which is relied on by defendant, was sold to the Holeproof Hosiery Co. of Milwaukee by plaintiff in 1931 and this machine is not at the Holeproof plant in South Pittsburg, Tenn. where it was inspected by defendant. This machine now has a latch ring that includes a gap closer on it, but the proofs show that the latch ring on this machine was changed sometime after March 10, 1932 when plaintiff shipped a new latch ring to Holeproof for this specific machine (PX's 17 and 18). There is no proof in the record of this case as to the details of the latch ring that was on this 86,062 machine when it was sold in 1931 and hence, there is no proof that it included a gap closer.

Plaintiff shipped six sets of parts to the Holeproof Hosiery Co. in Milwaukee on January 30, 1932 (DX-Z). These parts were to change 4 step, 8 bobbin Banner wrap machines to 8 step, 18 bobbin machines. The numbers parts lists are noted on the invoice (DX-Z), but the parts lists DX's M, N, O and P are not dated and were continuously being changed and brought up to date. Consequently, it is impossible to state with certainty that the parts that were shipped to Holeproof on January 30, 1932 corresponded to the parts on the parts lists DX's M, N, O and P. Holeproof's inquiry of March 4, 1932 (PX-15) stating that they were having trouble with the latches closing on the machines of the very kind to which these parts were to be applied is strong evidence that these parts did not include latch rings that had gap closers.

■ These sets of parts were not assembled in such a manner as to form the combination claimed by the 2,146,750 patent in suit prior to February 3, 1932. In order to constitute a disclosure to the public such as would constitute a prior public use or sale, these parts had to be completed, delivered and accepted. The completion in this case would require the assembly of these parts on a knitting machine. Thus, even if these parts did include a latch ring which had a gap closer, they were shipped by freight from Pawtucket, R. I. to Milwaukee, Wisc. on Januray 30, 1932 and could not have arrived there prior to February 3, 1932. Consequently, the mere shipment of these parts in unassembled condition on January 30, 1932 did not constitute a prior public use or sale of a completed combination embodying the subject matter of the claims of the 2,146,750 patent in suit.

■ The defendant infringed the patents in suit by making and installing the infringing devices, and by supplying parts with the knowledge and intent that the parts furnished would be used in a combination which would infringe, constitutes contributory infringement. Florence-Mayo Nuway v. Hardy et al., 4 Cir., 168 F.2d 778. The patents in suit Nos. 1,872,760 and 2,146,750 were before the court in Hemphill Company versus City Machine and Welding Co. in which a final judgment was entered April 17, 1942, holding the patents good and valid. The evidence here does not warrant a different result. Miles v. Mathews, 5 Cir., 171 F.2d 38.

■ The defendant insist that '608 anticipates '760. This would be true if both were for the same inventions. However, the applications were co-pending and the claims are for separate inventions. The unclaimed matter in the disclosure of the first patent is not abandoned by the issue of the first patent because the pendency of the second application rebuts such an inference. Nor is there any merit in the claim of double patenting. Traitel Marble Co. v. U. T. Hungerford Brass and Copper Co., 2 Cir., 22 F.2d 259; Sturtevant Co. v. Massachusetts Hair and Felt Co., 1 Cir., 122 F.2d 900, 913.

■ The contention that the inventions under patent '750 are not the joint invention of Lawson and Green is not sustained by proof. The circumstances shown do not warrant such an inference. On the contrary, the inference is warranted that they were the joint inventors. DeLaski & Thropp Circular Woven Tire Co. v. William R. Thropp and Sons Co., 3 Cir., 218 F. 458, 464.

It is earnestly urged by defendant that plaintiff made sale of apparatus embodying the claims in issue in patents '750 prior to Feb. 3, 1932. There are items of evidence concerning the sale of No. 86,062 machine to Holeproof which is located at South Pittsburg, Tenn. The proof is not satisfactory as to the precise mechanism with which it was supplied nor that the parts shipped by Hemphill for use on it, nor the parts shipped on January 30, 1932 to convert 6 Banner wrap machines to 18 Bobbin wrap machines were received and installed before Feb. 3, 1932. There is a strong suspicion in favor of defendant's contention, but the proof falls short of being clear, satisfactory and beyond a reasonable doubt which is the established rule in such cases. The Barbed Wire Patents Case (Washburn & Moen Mfg. Co. v. Beat 'em All Barbed Wire Co.,) 143 U.S. 275, 284, 12 S.Ct. 443, 36 L.Ed. 154; United Shoe Machinery Corp. v. Brooklyn Wood Heel Corp., 2 Cir., 77 F.2d 263, 264; Hoeltke v. Kemp, 4 Cir., 80 F.2d 912, 923; Sturtevant Co. v. Massachusetts Hair and Felt Co., 1 Cir., 124 F.2d 94, 97