Hyman **FREEDMAN**

v.

Alexander **FRIEDMAN**, trading as Friedman Dental Supply Company.

Civ. No. 7836.

United States District Court
D. Maryland.

June 20, 1956.

Constable, Alexander & Daneker, John D. Alexander, Baltimore, Md., and Roberts B. Larson and William G. Konold, Washington, D. C., for plaintiff.

Meyer D. Ohen, Baltimore, Md., for defendant.

R. DORSEY WATKINS, District Judge.

On February 28, 1939, United States Letters Patent No. 2,149,048 for artificial dental structures were issued to plaintiff. The patent relates to

"improvements in masticating apparatus and has for one of its objects to increase the retentiveness of an artificial denture with respect to the ridge of the mouth on which it is mounted, by utilizing a magnetic material in the structure in such a manner that opposed portions thereof, at least one of which contains said material, will act one upon the other to assist in the maintenance of said denture in its operative position."

Seven figures in the drawing accompanying the patent represent "mechanical expressions" of the "inventive idea." These range from complete upper and lower dentures with horseshoe magnets, through the field of removable bridgework, to magnetizable backings for opposite upper and lower molars. The description in the patent teaches that

"upon completion of the dentures", the formation of which "may be accomplished by following any preferred technique well known in the art", the "alloy in each of them is magnetized so that, for example, the posterior extremities will receive one polarity while the anterior portion thereof is of the opposite polarity."

Claims 3 and 4, which are representative, read as follows:

"3. As a new article of manufacture, a pair of artificial dentures made, at least partially, of magnetized material opposed portions of which in the two dentures are of like polarity.

"4. As a new article of manufacture, a pair of artificial dentures, the plates of which are at least partially made of magnetized alloy, with the opposed posterior extremities of both plates of one polarity and the opposed anterior portions of said plates of another polarity."

On November 8, 1954, plaintiff sued defendant, the complaint containing the usual jurisdictional allegations, and the further allegations that the patent was "duly and legally issued to plaintiff", and that defendant had been and was infringing the patent by "making, selling and using artificial dental structures embodying the patented invention." Defendant's answer denied knowledge or information sufficient to form a belief as to the truth of the allegations of validity, and as to infringement, alleged:

"Defendant further alleges that he is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph VI to the effect that he has been infringing the letters patent therein referred to; he further alleges that since March 31, 1954, and not prior thereto, he has made five separate purchases from the Magnet Sales Company, 3657 South Vermont Avenue, Los Angeles 7, California of 'Magnetic Dentures' the total amount paid therefor aggregating $71.25; that he further alleges that he has discontinued such purchases and will make none in the future; that the Defendant has no knowledge or information sufficient to form a belief as to whether or not his purchase and use of the items mentioned constituted an infringement of the letters patent of the Plaintiff."

Plaintiff through Interrogatories and Requests for Admissions developed that defendant had offered for sale and/or sold "Magnetic Dentures" purchased from Magnet Sales Company; that the "Magnetic Dentures" "included"[1] magnets specially designed to be employed in artificial dentures to provide such dentures with repelling action tending to force them apart and thus to assist in retaining the dentures in place; and that defendant had purchased twelve sets of magnets, at a total cost of $67.72, which he had resold to four named customers (together with two cash sales to unidentified purchasers) for a total of $109.05.

Defendant denied having installed any magnets in artificial dentures; denied knowledge as to the present location and ownership of any of the sets of magnets and whether any magnets were employed in artificial dentures; claimed innocent purchase of the magnets and that he had received no notice of the patent or of any alleged infringement before the institution of suit; and that he had offered to pay plaintiff the entire profits from such sales,[2] to avoid the expense of litigation.

1. In fact, the literature of Magnet Sales Company, admitted by defendant pursuant to plaintiff's Request for Admissions, makes it abundantly clear that what was offered for sale, and what defendant bought and resold, were "Certified Repelling Magnets" only. When properly incorporated in artificial dentures they were claimed to produce "Magnetic Dentures."

2. At the trial plaintiff's counsel stated that a reasonable royalty would not exceed this amount.

At the trial plaintiff offered in evidence a certified copy of the letters patent,[3] and copies of plaintiff's Interrogatories and defendant's Answers thereto, and copies of plaintiff's Requests for Admissions and defendant's Answers thereto. Defendant offered no evidence.

Plaintiff claims that defendant is liable as a contributory infringer under Section 271(c) of Title 35, United States Code, the relevant part of which reads as follows:

"Whoever sells a component of a * * * combination or composition, or a material * * * for use in practicing a patented process * * * knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

United States Code, Title 35, Sec. 282, provides that:

"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

Defendant did not directly assert invalidity, but merely denied knowledge or information sufficient to form a belief as to the truth of the allegation of validity. Nor did defendant plead any of the defenses enumerated in Section 282, nor give the 30-day written notice therein required, nor request permission at the trial to present proof with respect thereto.

Solely for the foregoing reasons, the Court is constrained [4] to treat the patent in suit as valid for the purposes of these proceedings.

Several questions are presented for decision:

■ 1. *Would an artificial denture incorporating the magnets sold by defendant infringe plaintiff's patent?*

Plaintiff, in his patent application, stated:

"In carrying out the invention, it is proposed to employ, as the magnetizable material used in the manufacture of the dental structure, an alloy consisting of aluminum, nickel, cobalt and iron, such as described in United States Patents Nos. 1,947,274, dated February 13, 1934; 1,968,569, dated July 31, 1934; and 1,989,551, dated January 29, 1935. This alloy is especially suitable for the purpose intended, primarily because of its exceedingly high point of magnetic saturation, the ability to retain its magnetism, and its capability of being used in smaller volume than any other known magnet material; also, the fact that the alloy is non-corrosive lends itself admirably for use in a dental structure."

Except as to dental bridgework, it is stated that the backing of the upper and lower dentures "is formed of *the* magnetizable alloy above mentioned, although

3. Various certified copies of assignments and reassignments of the patent were also offered but are not material for the decision of this case.

4. As validity is based solely upon the presumption from the mere issuance of the patent, and, in effect, the default of the defendant to raise a defense, the Court is desirous that no collateral advantage be secured by plaintiff from these proceedings. The Court inquired of counsel why this defendant had been sued instead of Magnet Sales Company, which admittedly advertises extensively throughout the country in dental magazines. Plaintiff's counsel replied that they had expected the manufacturer to intervene, or at least undertake the defense of the suit.

There would appear to be grave doubt (apart from the question of novelty) whether the patent does not relate to a principle or force of nature, O'Reilly v. Morse, 1853, 15 How. 62, 112–113, 117, 14 L.Ed. 601, rather than the means by which the force may be controlled to accomplish a new and useful result. The Telephone Cases (People's Telephone Co. v. American Bell Telephone Co.), 1888, 126 U.S. 1, 532, 8 S.Ct. 778, 31 L.Ed. 863.

it will be appreciated that *one* of the backings could be of *such metal* and the *other* of *some other magnetizable* material." (Emphasis supplied.)

Further, in the patent application, it is stated that "Upon completion of the dentures, the alloy in them is magnetized * * *"

The proof showed only that the magnets sold by defendant were "repelling magnets" "scientifically alloyed".

There was no evidence that the sets of magnets, or either magnet, was made of the alloys proposed by the inventor to be employed "as the magnetizable material used in the manufacture of the dental structure". Plaintiff knew the manufacturer from whom defendant purchased the magnets, and the names and addresses of the persons to whom they were sold. It was therefore possible for plaintiff to have proved the type of alloy used in the magnets. This he failed to do.

Also, the patent calls for magnetization of the alloy after the dentures had been completed. The "magnets" purchased and sold by defendant were of course "magnetized"[5] at the time of purchase and sale, and before incorporation into the dental structures.

For the foregoing reasons, I find as a fact and conclude as a matter of law, that plaintiff has failed to prove by a fair preponderance of the evidence that an artificial denture incorporating the magnets sold by defendant would infringe plaintiff's patent. This of course would be sufficient to dispose of the case; but as the parties tried and briefed the case solely on the question of contributory infringement, that problem will likewise be considered.[6]

2. *Contributory infringement.*

■ For contributory infringement there must be a sale of a component of a combination or composition by a vendor "knowing the same to be especially made or especially adapted for use in an infringement." Title 35 U.S.C. § 271(c).

The question is—what is the nature of the knowledge required by the statute in the use of the word "knowing". Plaintiff contends that it means "charged with knowledge"—specifically, that any person selling magnets adaptable for incorporation in artificial dentures is obliged to make a search of the Patent Office files to determine whether any patent has issued within the preceding 17 years for magnetized dentures. Defendant contends that "knowing" means knowing in fact, not constructively, that such magnets were especially made or especially adapted for use, or would be used, in a manner constituting a patent infringement.

The language of Title 35 U.S.C. § 271 (c), the legislative history, and the judicial construction of "contributory infringement" support defendant's position.

(a) Provisions of Section 271(c).

A contributory infringer is one who "sells a component of a * * * combination or composition, or a material * * * for use in practicing a patented process * * * knowing the same to be especially made or especially adapted for use in an infringement of such patent" and not a staple article suitable for substantial non-infringing use.

Ordinarily, any vendor would know that the article sold was intended for use. There may be instances in which the article was a collector's item, or of antiquarian interest, but these must be exceptional. Certainly defendant, in selling the repelling magnets in question, was required to anticipate, or assume, that they would be incorporated in artificial dentures. But there is no evi-

---

5. Webster's New International Dictionary, Second Edition, Unabridged. "Magnetize: * * * To communicate magnetic properties to; to convert into a magnet."

6. In view of the provisions of Title 35, Sec. 271(c), this discussion requires the assumption, contrary to the above finding, that such magnets "were especially made or especially adapted for use in an infringement."

dence that defendant made such sale "for use in practicing a patented process", and that he *knew* the magnets "to be especially made or especially adapted *for use in an infringement*" of plaintiff's patent. Here it may be assumed that defendant knew the magnets were adapted "for use"; but as there is no evidence that he knew [7] that they were "for use in an infringement", an essential requirement for contributory infringement is lacking.

(b) Legislative history.

Senate Report No. 1979, June 27, 1952, and House Report No. 1923, May 12, 1952 (the Senate Report repeating in substance the House Report) emphasize the necessity for knowledge that the component was especially made or especially adapted for use in the infringement before there can be contributory infringement.[8] It is also pointed out that the provisions of Section 271(c) are "much more restricted than many proponents of contributory infringement believe should be the case."[9]

Pertinent portions of these Reports follow:

"A detailed description of the provisions of H. R. 7794 as set forth in House Report No. 1923, Eighty-second Congress, is as follows:

"Although the principal purpose of the bill is the codification of title 35, United States Code, and involves simplification and clarification of language and arrangement, and elimination of obsolete and redundant provisions, there are a number of changes in substantive statutory law. These will be explained in some detail in the revision notes keyed to each section which appear in the appendix of this report. The major changes or innovations in the title

consist of incorporating a requirement for invention in § 103 and the judicial doctrine of contributory infringement in § 271."[10]

\* \* \* \* \* \*

"The next chapter relates to infringements of patents.

"Section 271, paragraph (a), is a declaration of what constitutes infringement. There is no declaration of what constitutes infringement in the present statute. It is not actually necessary because the granting clause creates certain exclusive rights and infringement would be any violation of those rights.

"Paragraphs (b), (c), and (d) relate to the subject referred to as contributory infringement. The doctrine of contributory infringement has been part of our law for about 80 years. It has been applied to enjoin those who sought to cause infringement by supplying someone else with the means and directions for infringing a patent. One who makes a special device constituting the heart of a patented machine and supplies it to others with directions (specific or implied) to complete the machine is obviously appropriating the benefit of the patented invention. It is for this reason that the doctrine of contributory infringement, which prevents appropriating another man's patented invention, has been characterized as 'an expression both of law and morals.' Considerable doubt and confusion as to the scope of contributory infringement has resulted from a number of decisions of the courts in recent years. The purpose of this section is to codify in statutory form principles of contributory infringement and at

---

7. Contrast the language of Sec. 271(a) under which an infringement occurs by the manufacture, use or sale of a patented invention, there being no requirement of knowledge. See also P. J. Federico, Commentary on the New Patent Act, Title 35, U.S.C.A. p. 53.

8. 2 U.S.Code Cong. & Adm.News 1952, p. 2402.

9. Ibid.

10. Ibid., p. 2397.

the same time eliminate this doubt and confusion. Paragraph (b) recites in broad terms that one who aids and abets an infringement is likewise an infringer. The principle of contributory infringement is set forth in the provisions of the next paragraph which is concerned with the usual situation in which contributory infringement arises. This latter paragraph is much more restricted than many proponents of contributory infringement believe should be the case. The sale of a component of a patented machine, etc., must constitute a material part of the invention and must be known to be especially made or especially adapted for use in the infringement before there can be contributory infringement, and likewise the sale of staple articles of commerce suitable for noninfringement use does not constitute contributory infringement. The last paragraph of this section provides that one who merely does what he is authorized to do by statute is not guilty of misuse of the patent. These paragraphs have as their main purpose clarification and stabilization."[11]

The Revision Notes are to the same effect:

"The first paragraph of this section is declaratory only, defining infringement.

"Paragraphs (b) and (c) define and limit contributory infringement of a patent and paragraph (d) is ancillary to these paragraphs, see preliminary general description of bill. One who actively induces infringement as by aiding and abetting the same is liable as an infringer, and so is one who sells a component part of a patented invention or material or apparatus for use therein knowing the same to be especially made or especially adapted for use in the infringement of the

patent except in the case of a staple article or commodity of commerce having other uses. A patentee is not deemed to have misused his patent solely by reason of doing anything authorized by the section."[12]

(c) Judicial construction.

The necessity of knowledge that the article sold will, and the intent that it shall, be used to infringe, in order that there be contributory infringement, has generally been recognized in the decisions.

Contributory infringement occurs when defendant "is manufacturing and selling machinery with the knowledge, purpose and intent that it shall be used in a combination which will infringe." Florence-Mayo Nuway Co. v. Hardy, 4 Cir., 1948, 168 F.2d 778, 785; contra, where use not known. Duplex Envelope Co. v. Denominational Envelope Co., 4 Cir., 1935, 80 F.2d 179, 182.

Contributory infringement was found where "the castings had utility only in [articles] which [defendants] either knew constituted an infringement, or should fairly be charged with such knowledge * * *." Southern States Equip. Corp. v. Usco Power Equipment Corp., 5 Cir., 1952, 209 F.2d 111, 121, and when "the defendants manufacture and sell materials for use in an infringing operation with knowledge that they will be so used." B. B. Chemical Co. v. Ellis, 1 Cir., 1941, 117 F.2d 829, 834. "To constitute contributory infringement, the device or material capable of infringing use must be sold with the intent that it shall be so used." Johnston v. Atlas Mineral Products Co. of Pa., 6 Cir., 1944, 140 F.2d 282, 285, affirming Atlas Mineral Products Co. v. Johnston, D.C.E.D.Mich.1942, 47 F.Supp. 948 ("In order to justify such a finding, I would have to find that the plaintiff not only furnished the materials in question, but it intended that they should be used by the purchaser to carry out the method prescribed in the patent." at page 951);

11. Ibid., p. 2402.

12. Ibid., p. 2421.

"Even in contributory infringement of a patent, the infringer can be liable as such only when he knowingly participates in the infringement." Zangerle & Peterson Co. v. Venice Furniture Novelty Mfg. Co., 7 Cir., 1943, 133 F.2d 266, 269. "When the manufacturer makes, uses or sells an unpatented (an old) element, he becomes a contributory infringer only when the element is knowingly made, sold or to be used as a part of a patentable combination * * *." Lincoln Engineering Co. v. Stewart-Warner Corporation, 7 Cir., 1937, 91 F.2d 757, 764; where defendants "supplied their respective materials and work * * * with knowledge, and with intent to aid the Sewerage Commission in committing its acts of infringement * * *." Fehr v. Activated Sludge, 7 Cir., 1936, 84 F.2d 948, 957; for contributory infringement the article must be "manufactured and/or sold to infringers with knowledge and intent and with the purpose that it will be so used." Beidler v. Photostat Corp., D.C.S.D.N.Y.1935, 10 F.Supp. 628, 631, affirmed per curiam, 2 Cir., 1936, 81 F.2d 1015; "'Contributory infringement * * * is intentional aid or cooperation in transactions, which collectively constitute complete infringement.'" "Intention" is the gist of the offense. El Dorado Foundry, Machine & Supply Co. v. Fluid Packed Pump Co., 8 Cir., 1936, 81 F.2d 782, 784; "Did defendant furnish to the infringer an element to be used by the latter in infringing complainant's patent, and did defendant furnish such element with the intent and purpose that it would be so used?" Chas. H. Lilly Co. v. I. F. Laucks, Inc., 9 Cir., 1933, 68 F.2d 175, 185; "By furnishing parts it makes it possible for others to assemble and use the combination, and when a manufacturer, by so manufacturing and advertising, points out the way in which this can be done, and thus, intentionally so acting, promote infringements of patentee's rights, he becomes a contributory infringer. * * * A device capable of an infringing use, and sold with the intent that it shall be so used, is an infringement of the patent * * *. But where, as here, it appears that each of the appellants manufactured with knowledge of the contemplated infringement, contributory infringement is clear." Westinghouse Electric & Mfg. Co. v. Precise Mfg. Co., 2 Cir., 1926, 11 F.2d 209, 211–212; "In the last analysis, the fundamental thought is that, before one may be held for contributory infringement, it must be shown that he had knowingly done some act without which the infringement would not have occurred." Individual Drinking Cup Co. v. Errett, 2 Cir., 1924, 297 F. 733, 739, 740.

And to the same effect see: Baldwin Rubber Co. v. Paine & Williams Co., 6 Cir., 1938, 99 F.2d 1, 5; Westinghouse Electric & Mfg. Co. v. Simms Magneto Co., D.C.N.J.1922, 286 F. 558, 561–562, reversed on other grounds, 3 Cir., 1922, 286 F. 562; Safety Car Heating & Lighting Co. v. Gould Coupler Co., D.C.N.Y. 1915, 229 F. 429, 439; New York Scaffolding Co. v. Whitney, 8 Cir., 1915, 224 F. 452, 458; Gates Rubber Co. v. B. F. Goodrich Rubber Co., D.C.Colo.1930, 45 F.2d 652, 653; General Electric Co. v. Sutter, C.C.Pa.1911, 186 F. 637, 638; Hemphill Co. v. Jordan, D.C.N.C.1949, 86 F.Supp. 248, 251; Aeration Processes v. Walter Kidde & Co., D.C.N.Y.1948, 77 F.Supp. 647, 654; Conmar Products Corporation v. Tibony, D.C.N.Y.1945, 63 F. Supp. 372, 374; Hall v. Montgomery Ward & Co., D.C.W.Va.1944, 57 F.Supp. 430, 438; Detroit Lubricator Co. v. Toussaint, D.C.Ill.1944, 57 F.Supp. 837, 838; Livesay v. Drolet, D.C.Fla.1941, 38 F. Supp. 885, 890; Alemite Corp. v. Rogers, D.C.Pa.1934, 5 F.Supp. 940, 941; Emery v. G. C. Murphy Co., D.C.Conn.1933, 4 F.Supp. 575, 580; and American Voting Mach. Corporation v. City of New York, D.C.N.Y.1933, 2 F.Supp. 191, 192.

For the foregoing reasons judgment will be entered for the defendant.